**SIGNED** this 25<u>th</u> day of August, 2017.

Kevin HOLT, Petitioner,

v.

**J. A. TERRIS, Warden, Respondent.**

Case No. 16–10667

United States District Court,
E.D. Michigan, Southern Division.

Signed 08/18/2017

---

Kevin Holt, Milan, MI, pro se.

Patricia G. Gaedeke, U.S. Attorney's Office, Detroit, MI, for Respondent.

## OPINION AND ORDER ACCEPTING THE MAGISTRATE JUDGE'S RECOMMENDATION [8] AND DENYING PETITION FOR HABEAS CORPUS [1]

LAURIE J. MICHELSON, U.S. DISTRICT JUDGE

This case presents this question: can a military prisoner serving a life sentence use his Military Abatement Good Time (MAGT) to advance the date that he will likely be released on parole? The parties have not provided, and the Court has not found, legal authority explicitly stating that MAGT (as opposed to other types of good time) cannot advance the date a prisoner is likely to be released on parole (either as a general matter or in the specific case where a prisoner is serving a life sentence). But it does appear that MAGT earned by a prisoner serving an indeterminate life sentence must be held in abeyance unless and until that prisoner's sentence is reduced to a determinate sentence. Moreover, Petition Kevin Holt analogizes MAGT with Extra Good Time, and it is clear that Extra Good Time does not advance the date a prisoner is likely to be released on parole. For these reasons and those that follow, the Court will deny Holt's petition for a writ of habeas corpus.

In 1993, Holt was convicted of murder in a military court and sentenced to life in prison. (R. 5, PID 23.) Holt spent the first nine years of his sentence in a military prison, where he earned 993 days of MAGT. (R. 1, PID 7.)

In January 2002, Holt was transferred to the Bureau of Prisons (BOP) to serve the remainder of his life sentence. (Id.)

In 2011, the United States Parole Commission assessed Holt for parole. (See R. 1, PID 12.) Although parole has been abolished in the federal system, military prisoners in the custody of BOP are still eligible. See Hirsch v. Sec'y of Army, 172 F.3d 878 (table), 1999 WL 110549, at *2 (10th Cir. 1999). The Parole Commission rescinded Holt's presumptive parole date of January 2012 and provided that the BOP "should calculate a two-thirds date on the military sentence of life in prison." (See R. 1, PID 12.) The "two-thirds" date is a reference to 18 U.S.C. § 4206(d) (repealed), which provides that federal prisoners who have a sentence of more than five years "shall be released on parole after having served two-thirds of each consecutive term or terms" or, in the case of a life sentence, "shall be released on parole

... after serving thirty years"—unless the prisoner has "seriously or frequently violated institution rules [or] regulations" or there is "a reasonable probability that [the prisoner] will commit any Federal, State, or local crime." As Holt has a life sentence, the BOP calculated Holt's "two-thirds" date to be 30 years from the start of his sentence, i.e., May 25, 2022. (R. 1, PID 13.) This calculation of Holt's release-on-parole date did not include Holt's 993 days of MAGT.

Holt believes it should have. He argues, "If the BOP credits me with the 993 days of [MAGT] it will reduce my two-thirds date by 993 days which would give me an earlier release date on mandatory parole." (R. 1, PID 7–8; *see also* R. 9, PID 97.) The result, says Holt, is that he should be released from prison on September 8, 2019. (R. 1, PID 8–9.) Holt petitions this Court for a writ of habeas corpus, apparently asking this Court to order that his MAGT be applied to his two-thirds date. (*See* R. 1, PID 9.)

The Court referred Holt's petition to Magistrate Judge Patricia T. Morris. (R. 7.) She recommends denying Holt's petition. She explains, "Although Petitioner correctly notes that he earned 993 [days] of MAGT, military policy dictates that these [days] be held in abeyance if and until his life sentence becomes determinate, and the military—not the BoP—computes the sentence.... [I]f and when Petitioner's sentence is reduced to a determinate length, the issue of [MAGT] credit can be properly addressed with the military at that time." (R. 8, PID 90 (internal quotation marks omitted).)

Holt objects. As this Court understands it, Holt's argument (both before the Magistrate Judge and this Court) is based on subsection (f) of 28 C.F.R. § 2.60. (*See* R. 1, PID 8; R. 6, PID 70; R. 9, PID 95–96.) Another subsection of § 2.60 provides that prisoners who "demonstrate superior program achievement (in addition to a good conduct record) may be considered for a limited advancement" of their presumptive release date. 28 C.F.R. § 2.60(a). ("Superior program achievement may be demonstrated in areas such as educational, vocational, industry, or counselling programs." 28 C.F.R. § 2.60(b).) Subsection (f) then provides, "*If the prisoner's presumptive release date has been further reduced by extra good time (18 U.S.C. 4162)* and such reduction equals or exceeds the reduction applicable for superior program achievement, the Commission will not give an additional reduction for superior program achievement." 28 C.F.R. § 2.60(f) (emphasis added). It is Holt's position that the emphasized language shows that a "presumptive release date" can be reduced by "extra good time." (*See* R. 6, PID 70.) He then argues that his two-thirds date is his "presumptive release date" and that his MAGT is "extra good time." (R. 1, PID 8; *see also* R. 6, PID 70; R. 9, PID 95–96.) It follows, according to Holt, that his two-thirds date (May 25, 2022) can be advanced by his 993 days of MAGT.

Before addressing Holt's argument directly, the Court pauses to note that Holt may not even have MAGT available for use at this moment. When Holt grieved that his two-thirds date should be advanced by his MAGT, the BOP told Holt that "[i]nmates serving a life sentence have their MAGT held in abeyance until such time that their sentences are reduced to a definite term." (R. 5, PID 64.) Respondent and the Magistrate Judge agree. (R. 5, PID 30–31; R. 8, PID 89.) The legal basis for this position appears to be an appendix to a Department of Defense Instruction providing that there are only three ways a military prisoner can abate his sentence: Good Conduct Time, Earned Time, and Special Acts Abatement. Dep't of Defense

Inst. No. 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Authority* (Mar. 11, 2013), *available at* https://fas.org/irp/doddir/dod/i 1325_07.pdf. And the Instruction says that a prisoner who has a life sentence may earn these abatement credits, but the time will be "held in abeyance." *Id.* at 69, 73, 76. And for Good Conduct Time and Earned Time (but not Special Acts Abatement), the Instruction further provides that for prisoners with a life sentence, the prisoner's abetment time "shall be ... only awarded if the sentence is reduced to a determinate length." *Id.* at 73; *accord id.* at 69. In a letter to Holt, a supervisor of inmate personnel with the Department of the Army equated MAGT with Earned Time. (*See* R. 1, PID 51.) Based on all of this then, it appears that Holt's MAGT is properly held in abeyance unless and until his sentence is reduced to a determinate length.

But Holt believes he has a determinate sentence. He says that his parole date of May 25, 2022 is the end of sentence. In support, Holt relies on the regulation governing the two-thirds date: 28 C.F.R. § 2.53. (*See* R. 1, PID 9 (citing 28 C.F.R. § 2.53); R. 6, PID 72; R. 9, PID 95 (citing 28 C.F.R. § 2.53).)

██ It is true, as Holt points out, that § 2.53 is titled "Mandatory parole." But the text of that regulation, and the statute governing the two-thirds date, make clear that release on parole is still conditional on the Parole Commission finding (1) that the prisoner has not seriously or frequently violated his facility's rules and regulations and (2) that the prisoner is unlikely to commit a crime upon release. *See* 18 U.S.C. § 4206(d); 28 C.F.R. § 2.53(a). In other words, Holt's release on parole on his two-thirds date is not completely certain. And even it were certain, his release on parole would not mean that his *sentence*

would be over: "A prisoner released on mandatory parole pursuant to this section shall remain under supervision until the expiration of the full term of his sentence unless the Commission terminates parole supervision pursuant to § 2.43 prior to the full term date of the sentence." 28 C.F.R. § 2.53(c); *see also Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."). In other words, there is a difference between a prisoner's release on parole date and the completion of his full sentence. Thus, if MAGT is held in abeyance until a prisoner has a determinate sentence, Holt's petition must be denied because his two-thirds date did not convert his indeterminate life sentence into a determinate sentence of 30 years.

While it seems as though Holt's MAGT must be held in abeyance until he receives a determinate sentence, the letter equating Earned Time and MAGT is not entirely convincing. Holt earned 993 days of MAGT over about a nine-year period, but, according to the letter, Earned Time accrues at only 60 days per year. So if Earned Time is the same as MAGT, it seems that Holt should have only earned around 540 days (9 years x 60 days) of MAGT. Yet Holt has 993 days of MAGT. Further, the Court recognizes that a Department of Defense Instruction from 2013 that speaks only of Good Conduct Time, Earned Time, and Special Acts Abatement is not the most persuasive legal authority for when Military Abatement Good Time, awarded to Holt in the 1990s, becomes effective.

So the Court returns to Holt's argument that his two-thirds date is a presumptive release date, that his MAGT is extra good time, and so, under the conditional clause

of § 2.60(f), his MAGT can advance his two-thirds date.

Holt may be correct that the MAGT he earned at his military prison should be treated as if it were extra good time earned in a BOP facility. *See* 28 C.F.R. § 523.17(n) ("Extra good time earned in Federal Prison Industries in a military or Coast Guard installation is treated the same as if earned in Federal Prison Industries in the Bureau of Prisons. *Other forms of military or Coast Guard extra good time, such as Army Abatement time, are fully credited,* but no seniority is allowed." (emphasis added)); *Mansfield v. Beeler,* 238 Fed.Appx. 794, 796 (3d Cir. 2007) ("Military Abatement Good Time Credit, which is similar to Extra Good Time Credit under 18 U.S.C. § 4162, is awarded at the discretion of the [Army Disciplinary Barracks] on the basis of employment with the prison industries.").

But assuming that the BOP should apply Holt's MAGT in the same manner as it applies extra good time, Holt would still have to show that his two-thirds date is the end of his sentence (which, as just explained, it is not). This is because extra good time can only shorten a sentence:

> Extra Good Time means a credit to a *sentence* as authorized by 18 U.S.C. 4162 for performing exceptionally meritorious service or for performing duties of outstanding importance in an institution or for employment in a Federal Prison Industry or Camp.

28 C.F.R. § 523.1(b) (emphasis added); *see also* 18 U.S.C. § 4162 (repealed) (referring to a deduction from a "sentence"); 28 C.F.R. § 523.17(f) ("An inmate serving a life sentence may earn extra good time even though there is no mandatory release date from which to deduct the credit since the possibility exists that the sentence may be reduced or commuted to a definite term."). Indeed, although not speaking of

extra good time specifically, the Parole Commission has taken the position that "the only function of good time credits is to determine the point in a prisoner's *sentence* when, *in the absence of parole,* the prisoner is to be conditionally released on supervision." 28 C.F.R. § 2.35(b) (emphasis added).

But if extra good time can only be deducted from a sentence, that raises the question of why § 2.60(f) says, "If the prisoner's *presumptive release date* has been further reduced by extra good time (18 U.S.C. 4162)"? The most likely explanation is that a presumptive release date can be either a parole release date or a sentence end date. *See* 28 C.F.R. § 2.12(b) ("the Commission shall ... set a presumptive release date (either by parole *or* by mandatory release) ...." (emphasis added)); 28 C.F.R. § 2.1(g) (distinguishing between release on parole and "mandatory release" and providing that mandatory release is, as set forth in 18 U.S.C. §§ 4163, 4164, the expiration of a term of sentence less good time). In other words, § 2.60(f) can be read as contemplating a reduction of the presumptive release date by extra good time credit in the situation when the prisoner's presumptive release date is a mandatory release date, but not when the prisoner's presumptive release date is a parole date. And reading § 2.60(f) this way harmonizes the regulation with 18 U.S.C. § 4162 and 28 C.F.R. § 523.1(b), which, as discussed, explicitly state that extra good time is applied to a sentence.

In short, Holt has not carried his burden of showing that MAGT can advance his May 2022 two-thirds date. *See Espinoza v. Sabol,* 558 F.3d 83, 89 (1st Cir. 2009) ("In our view, the burden of proof under § 2241 is on the prisoner[.]"); *Sawyers v. Warden, USP Atlanta,* 465 Fed.Appx. 837, 839 (11th Cir. 2012) (finding that "because [prisoner] failed to satisfy his burden of

proof" that D.C. Educational Good Time applied, "he was not entitled to § 2241 relief"). As such, the Court will ACCEPT the Magistrate Judge's recommendation (R. 8) and DENY Holt's petition for habeas corpus (R. 1).

SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)

Patricia T. Morris, United States Magistrate Judge

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Holt's Petition for Writ of Habeas Corpus, (Doc. 1), be **DENIED and DISMISSED**.

## II. REPORT

### A. Introduction

Kevin Holt ("Petitioner") is a military prisoner serving a life sentence, presently confined at the Federal Correctional Institution in Milan, MI. (Doc. 1 at 1–2). He contends generally that the Bureau of Prisons "refuses to credit me with 993 days of Military Abatement Good Time ["MAGT"][1] that would shorten my Mandatory Release Date." (Doc. 1 at 2). He filed this Petition on February 23, 2016, (Doc. 1), a Response was filed on April 28, 2016, (Doc. 5), and a Reply was filed on May 11, 2016. (Doc. 6). On November 7, 2016, District Judge Laurie Michelson referred all pretrial matters to the undersigned Magistrate Judge. (Doc. 7).

In January 2002, Petitioner was transferred from a military prison in Kansas to serve the remainder of his sentence "in the Federal Bureau of Prisons" ("BOP"). (Doc. 1 at 7). Following a hearing in August 2011, the United States Parole Commission ("USPC") instructed the BOP to rescind Petitioner's presumptive parole date of January 15, 2012, and to "calculate a two-thirds date[2] on the military sentence of life in prison." (Doc. 1, Ex. B). As of February 11, 2014, his MAGT for remaining in a working status totaled 993 days. (Doc. 5, Ex. 5 at 6); (Doc. 1, Ex. A).

Petitioner submitted a request on September 3, 2014 to prison staff requesting that his two-thirds date be reduced to credit his 993 days of MAGT. (Doc. 5, Ex. 5 at 1). He received a denial on October 16, 2014, which noted that his sentence computation was "accurate in accordance with the most recent computation received by the military." (*Id.*). Again, Petitioner attempted an informal resolution on November 5, 2014. (Doc. 5, Ex. 5 at 9–10). In a December 2014 response, warden Rafael Zuniga reiterated that Petitioner's projected two-thirds date remained "May 25, 2022," and that although his MAGT "does in fact add up to 993 days," "the DSCC [Designation and Sentence Computation Center] does not calculate military good time" because "[s]entence computations for military inmates are done by the military on an annual basis." (Doc. 5, Ex. 5 at 11). Petitioner later appealed in January 2015, ostensibly agreeing with the computation of his two-thirds date and MAGT, but asserting that "the BOP has not to date credited my sentence" with the MAGT—

---

1. MAGT is granted at the discretion of the Army Disciplinary Barracks "on the basis of employment with the prison industries," and may be used in sentence computations rendered by the military, a process discussed in further detail below. *Mansfield v. Beeler,* 238 Fed.Appx. 794, 796 (3d Cir. 2007).

2. A "two-thirds date" describes a prisoner's "mandatory parole" date as defined in 18 U.S.C. § 4206 and 28 C.F.R § 2.53. I address its significance to this Petition at greater length in my analysis below.

he was again denied in February 2015. (Doc. 5, Ex. 5 at 12–13). The final appellate response Petitioner received in July 2015 sang a similar refrain that "the Bureau of Prisons has no authority to change [his] sentence computation without receiving a new sentence computation from the U.S. Military Disciplinary Barracks," and that MAGT "is only awarded to inmates serving a definite term of confinement. Inmates serving a *life* sentence have their MAGT held in abeyance until such time that their sentences are reduced to a definite term." (Doc. 5, Ex. 5 at 19) (emphasis added).

On March 22, 2016, the USPC conducted an interim hearing and ultimately "decided to continue [Petitioner] to the expiration of [his] sentence." (Doc. 5, Ex. 6). Petitioner's next statutory interim hearing is scheduled to occur in March 2018. (*Id.*).

### B. Analysis and Conclusion

Citing 18 U.S.C. § 4206(d), Petitioner suggests he "would be eligible for release under 'mandatory parole' on" September 8, 2019 "[i]f credited with the 993 days of Military Abatement Good Time" (Doc. 1 at 8). Because the BOP determined contrarily that he would be eligible for release under mandatory parole on May 25, 2022, Petitioner contends that "the BOP did not give [him] credit" for his MAGT. (Doc. 1 at 9).

In 1984, Congress essentially abolished federal parole and the USPC with the Sentencing Reform Act. The prospect of federal parole remains, however, for individuals found guilty of any offense described in "the Uniform Code of Military Justice." [3] 18 U.S.C. § 3551(a); *see Walden v. U.S. Parole Com'n*, 114 F.3d 1136, 1138 (11th Cir. 1997) ("The SRA provides for the total revamping of the sentencing procedures in the federal judicial system. It replaces a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole. Inasmuch as there will be no parole for those convicted after the effective date of the SRA, the Act abolishes the Parole Commission, and repeals most of the pre-existing statutory framework governing parole of federal prisoners." (internal citations omitted)); *see also* Paul J. Larkin, Jr., *Parole: Corpse or Phoenix?*, 50 Am. Crim. L. Rev. 303, 336 (2013) ("The Parole Commission ... has responsibility for inmates convicted under the Uniform Code of Military Justice incarcerated in Bureau of Prisons institutions."). Under 10 U.S.C. § 858(a), military prisoners may be confined "in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use." When confined to a non-military institution, these prisoners "are subject to the same discipline and treatment as" other federal prisoners, which includes parole regulations applicable to all other federal prisoners prior to the effective date of the SRA. *Id.*; *accord, e.g.*,

---

**3.** The USPC remains responsible for several narrow categories of federal prisoners. This includes: (a) "Old Law Cases"—prisoners convicted of federal crimes prior to November 1, 1987, the effective date of the SRA; (b) "Territorial Prisoners"—prisoners sentenced for U.S. Code violations "in all territories," as well as territorial offenses committed in territories other than the Virgin Islands, Puerto Rico, Guam, American Samoa, or the Trust territories of the Pacific Islands; (c) "District of Columbia Code Prisoners"—prisoners sentenced for non-federal felony offenses in the District of Columbia; (d) "Military Prisoners"—sentenced by military courts-martial and then transferred to a federal BOP institution; and (e) "Transfer Treaty Cases"—prisoners "returned to the United States under a prison transfer treaty" whose offense occurred abroad prior to November 1, 1987. *See generally* Federal Bureau of Prisons, *Rules and Procedures Manual*, § 2.2, at 10–12 (2010).

*Hirsch v. Sec'y of Army*, 172 F.3d 878, 1999 WL 110549, at \*2 (10th Cir. Mar. 2, 1999) ("It has long been established that military prisoners may properly be confined in federal institutions and when so confined are subject to all laws pertaining to federal prisoners to the same extent as though the conviction had been by civil court, even though the system of parole ...[is] different for prisoners confined in disciplinary barracks.") (quoting *Bates v. Wilkinson*, 267 F.2d 779, 780 (5th Cir. 1959)); *King v. Federal Bureau of Prisons*, 406 F.Supp. 36, 38–39 (E.D. Ill. 1976) (construing 10 U.S.C. § 858(a) as subjecting military prisoners confined in federal penitentiaries to "the [parole] statute applicable to federal prisoners"). For this reason, this Court shall apply 18 U.S.C. 4206—an otherwise repealed law—to the facts at hand.

"[J]udicial review of events occurring after sentence is properly had under [section] 2241." *Cohen v. United States*, 593 F.2d 766, 770 (6th Cir. 1979); *e.g.*, *Allen v. Lamanna*, 13 Fed.Appx. 308, 311 (6th Cir. 2001) (recognizing that "challenges to the execution of a sentence, such as the computation of parole or sentence credits" must be brought under 28 U.S.C. § 2241). Eligible prisoners previously denied parole "shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier," 18 U.S.C. § 4206(d), *unless* "the Commission determines that there is a reasonable probability that the prisoner will commit any Federal, State, or local crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined." 28 C.F.R. § 2.53. In Public Statement 5110.16, the BOP confirms that it "must accept a sentence computation provided by the military," and clarifies that "a manual Good Time Record form ... is not maintained for military inmates." BOP Program Statement, *Administration of Sentence for Military Inmates*, No. 5110.16, at 2–3 (2011). MAGT "shall not be awarded to a prisoner who has a life ... sentence." DoDI, *Administration of Military Correctional Facilities and Clemency and Parole Authority*, No. 1325.07, at 69 (2013). Such a prisoner "shall *earn*" MAGT, "but it shall be held in abeyance and *awarded* only if the sentence is reduced to a determinate length." *Id.* In turn, the BOP follows a simple formula in calculating mandatory parole eligibility dates for life sentences under § 4206(d):

> The mathematical formula for calculating a thirty year date is, of course, simple addition and is accomplished by adding thirty years to the DCB and then backing up one day (e.g., 30 years + 08-12-1982 = 08-11-2012\*). Remember, any sentence that is forty-five years or longer (including a life sentence) will be eligible for parole under this section (18 USC § 4206(d)) after serving thirty years.

Chapter VII, p. 13. BOP Program Statement, *Old Law Sentence Computation Manual*, No. 5880.30, Chapter VII, at 13–14 (1999).

■ As an initial matter, mandatory parole is not an entitlement, and its designation is a misnomer. The USPC need not grant any prisoner parole on his slated two-thirds date if it deems him either likely to resort to further criminal activity or responsible for substantial noncompliance with the institution's rules. *Accord Robinson v. Terris*, No. 2:13–CV–12973, 2013 WL 3850200, at \*2 (E.D. Mich. July 25, 2013) ("[T]he [USPC] has the discretion to deny parole if it determines that a prisoner has a record of prison misconducts or is likely to commit a crime upon release.").

That the government "holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained," and such hope "is not protected by due process." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *accord Lee v. Withrow*, 76 F.Supp.2d 789, 792 (E.D. Mich. 1999) ("There is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence."). In other words, mandatory parole is only mandatory if the USPC determines it should be. The BOP's refusal to credit Petitioner's MAGT to his two-thirds date, therefore, presents no constitutional issue whatsoever.

Even if Petitioner held a constitutionally significant interest in an earlier eligibility date, however, the BOP remains powerless to correct any harm done it. The military initially computed Petitioner's sentence on March 17, 1993, and since then reaffirmed it annually. (Doc. 5, Ex. 1). Thereafter, the BOP calculated Petitioner's two-thirds date in accordance with section 4206(d) and the mathematical formula illustrated in Program Statement 5880.30. Although Petitioner correctly notes that he earned 993 hours of MAGT, military policy dictates that these hours be held in abeyance if and until his life sentence becomes determinate, and the military—not the BOP—computes the sentence. *See, e.g., Curry v. Fischer*, No. 09–2104, 2010 WL 1994843, at *1 (D. Minn. Apr. 21, 2010) ("Persons confined in penal or correctional institutions not under the control of one of the armed forces are subject to the same conditions as persons confined or committed by the Courts of the United States. However, the final computation for all military sentences is provided by the records office of the United States Army Disciplinary Barracks, Fort Leavenworth, Kansas, and the BOP must accept the sentence computation provided by military authorities." (internal citations omitted)). As Respondent notes, if and when Petitioner's sentence "is reduced to a determinate length, the issue of [MAGT] credit can be properly addressed with the military at that time." (Doc. 5 at ID 31).

For these reasons, **IT IS RECOMMENDED** that Holt's Petition for Writ of Habeas Corpus, (Doc. 1), be **DENIED and DISMISSED.**

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation

to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.